[L. A. No. 11029. In Bank.—September 29, 1931.]

CHARLES A. McDONALD, Appellant, v. RICHARD CANTLEY et al., Respondents.

Bertrand J. Wellman for Appellant.

Joe Crider, Jr., for Respondents.

SEAWELL, J.—Plaintiff appeals from a judgment entered in a personal injury action in the above-entitled causes upon a jury's verdict rendered in favor of Richard Cantley and Joseph Tanzola, partners doing a trucking business under the partnership name of Cantley & Tanzola, and E. L. Cook, the latter being employed as a driver for said trucking company. D. F. Staley was an original defendant in the action, but having defaulted a judgment was entered against him in the sum of $7,400, after the trial of the action from which this appeal is taken.

· The injuries were inflicted upon plaintiff on the afternoon of May 21, 1927, while he was engaged in making borings

upon the northerly slope of Cahuenga Pass, at a point where the Dark Canyon road leads to the right from said highway, for the purpose of testing the soil with the view of constructing a sewer therein. At the time of the accident the traffic on said Cahuenga Pass was very congested, there being two or more lanes of automobiles traveling southerly and one lane traveling northerly. Plaintiff had drilled a hole with a hand drill, by turning a handle affixed to the drill, some six feet into the earth, which left the balance of the drill about eighteen inches above the earth. He was upon his knees operating the drill at a point some six or seven feet easterly of the east edge of the pavement. His truck was parked from six to ten feet northerly from where he was working, and it was either wholly off the pavement or possibly the two left wheels may have been upon the pavement a few inches from the outer edge. While in this position he was struck by the truck driven by E. L. Cook, who was then in the employ of said copartnership. Mr. Cook, a young man twenty-one years of age, was traveling northerly on said highway downgrade, within one foot of its easterly edge, driving an American La France six-wheel dump cart weighing seven tons. His rate of speed, as testified to by a number of witnesses, was between ten and twelve miles per hour. Immediately behind him was A. Weise, who was on his way to the Hollywood Country Club. Stanley Terwhilliger, driving a truck, was immediately behind Mr. Weise. The highway was practically covered by automobiles. D. F. Staley, who was driving a Dodge coupe weighing about 2,800 pounds, was first noticed passing Terwhilliger, and next in attempting to pass Mr. Weise and the Cook truck. As Staley undertook to leave his lane of travel to pass Weise and Cook, he observed a truck coming southerly toward him and in his effort to avoid being hit by it he turned his car to the right, traveling at the rate of thirty or thirty-five miles per hour, barely grazing the truck on his left, and in attempting to clear it he steered into the truck driven by Cook to his right. He gave no alarm whatever of his approach. The right fender of Staley's car, just before it reached the point opposite to where plaintiff was at work, struck the hub cap of the truck driven by Cook. The impact swerved the truck to the right, and caused Cook to lose control of the steering-wheel, and before

he could get the truck under control, it had passed over the body of plaintiff, and was resting against an embankment of the road. Whether the wheels of the truck cleared the body of plaintiff, or whether his injuries were inflicted by the handle of the boring apparatus being driven against him with great force, is neither certain nor material. By the impact he suffered a fracture of both bones of the left leg below the knee and the fibula of the right leg was broken near the ankle, and many bruises and injuries were inflicted. He was taken from beneath the truck by Mr. Cook and the truck soon thereafter took fire, caused by the flow of gasoline escaping from the breaking of the gas line upon the muffler. The conduct of Staley was wanton and reckless. Weise, who had halted his car in the face of an anticipated crash, thus described the conduct of Staley:

"I was going north, and I saw this truck ahead of me, and a Dodge coupe passed me, evidently to get in between me and this truck and another truck coming south. Just as this truck got opposite the truck ahead of me, this fellow in the Dodge coupe decided to go between us, which he did, and he struck the left—the car coming south on the left, which threw him over to the right and struck the truck that this fellow was driving, and the impact apparently threw this young fellow off.

. . . . . . . . . . . . .

"He went through there and hit this young fellow's left wheel and threw it over.

. . . . . . . . . . . . .

"Yes, I saw him hit this, and he kept right on going.

. . . . . . . . . . . . .

"There was enough space for him to get through, because he got through . . . I don't see how he ever got through myself."

Mr. Terwhilliger testified: "I was going along following the truck and Mr. Weise was in between us. And this Dodge came out around me and he attracted my attention because, as one will that drives a truck, he feels a thing sometimes. He came around me and I didn't see any place for him to go only at Mr. Weise and he seemed to go in and out and out again. After he passed Mr. Weise he seemed to dig in there and hesitate a minute and went out around this truck and passed him, and as he started, there

[were] two lines of traffic coming the other way, coming south; there was two lines. There was room enough to get through—not quite enough, because he struck the left front wheel of this fellow's truck, of Cook's truck. The truck swerved at almost right angles off the road, then at the same time went off again at an angle—not at right angles, but more to straighten up again and go off that way. The Dodge just kept going.''

Cook, the driver of the truck which was struck, observed the plaintiff at the side of the road some twenty-five or thirty feet before his truck was struck by the Dodge car. The truck had not been used but eight or nine months, and was in good condition. The impact was heard by Weise and Terwhilliger, and, as sworn to by Mr. Cook, wrenched the steering-wheel out of his hand and he applied the brakes and attempted to turn the truck to the left so as to avoid running into plaintiff. When the truck was brought to a stop it was facing northeasterly. It had been traveling in a northerly course. Staley did not stop, but kept going at a high rate of speed. He was pursued by Weise a distance of two and a half miles. Weise blew his horn and made other efforts to stop him, and only succeeded by finally cutting in front of him. Staley admitted he heard and felt the impact. On this point Weise testified: ''I asked why he didn't stop and go back. He said he was not hurt. I said, 'I know that.' I said, 'You had better go back, because there has been somebody hurt, and two trucks are apparently in trouble!' '' Staley refused to go back and left the next morning for the state of New York. He was there five months, returned to California and was in Sacramento four months, and then came back to Los Angeles, where he remained two months before he learned anyone had been hurt in the accident, according to his testimony given at the trial. He was conscious of possible trouble, as he left a note at his son-in-law's house on the evening the trouble occurred informing him ''that they said there was an accident back there and that a fellow stopped and told me that they had my number . . . '' He claimed at the trial that he had purchased reservations for the following day, and left in accordance with his plans. He further testified that he was not stopped by Weise, but stopped voluntarily as he observed after traveling some quarter of

a mile that his right forward fender was "drooped", and he got out and pulled it into place. The evidence showed a dent on the truck's hub cap, some paint was knocked off and the paint of the Dodge car had adhered to the cap. An indentation of some twelve or fourteen inches in length was admitted by a member of Staley's family to have been visible upon the right front fender on the day following the accident. In explaining his meandering course through said automobiles, the defendant said the truck going southerly changed its course and headed directly for him, and his hitting the Cook truck was in an effort to avoid said oncoming truck.

The testimony of the several disinterested witnesses and the physical facts are conclusive as to reckless driving on the part of Staley, and that it was the direct and proximate cause of the injuries inflicted upon plaintiff.

Plaintiff invokes the aid of the doctrine of *res ipsa loquitur* and complains of the court's refusal to give an instruction applying that doctrine to the facts of the instant case. We know of no case presenting facts similar to those disclosed by the record of the instant case in which the rule was applied. The complaint in the instant case describes the manner in which the injuries were inflicted. But waiving this obstacle, there can be no doubt but that Staley had control of the instrumentality that caused the injury and is wholly responsible for it. This was overwhelmingly established by disinterested testimony. Appellant has cited a number of cases in which the rule was applied to common carriers of passengers, and to cases in which, without any explanation whatsoever as to cause, an automobile left the highway and inflicted injury. This is not such a case. But if it be conceded that the rule of evidence known as *res ipsa loquitur* could under any circumstances have a place in this class of cases, it was completely overcome by direct evidence in the instant case which is practically one way, and the jury so decided.

The approved instruction defining proximate cause was given and appellant cannot be heard to complain because another was not given.

Neither was it error for the court in its discretion to refuse to cause the jury to inspect the Dodge car after more than a year had passed since the accident. Its con-

dition was testified to by Staley, its owner, and by such witnesses as the plaintiff chose to produce.

The instructions were full and fair and responsive to the issues, and the rulings of the court were not in any particular prejudicial to appellant. There is no theory upon which the judgment can be reversed.

The judgment and order are affirmed.

Richards, J., Curtis, J., Preston, J., Shenk, J., and Waste, C. J., concurred.