[Civ. No. 11435. First Dist., Div. One.—April 22, 1941.]

THERESA LEE, Appellant, v. MARY J. DAWSON et al., Respondents.

John H. Crabbe and Laurel W. Streiff for Appellant.

R. L. Husted for Respondent Minnie Coburn.

PETERS, P. J.—Plaintiff brought this action to recover damages for personal injuries received when she fell down a flight of stairs in a residence owned by the defendant Minnie Coburn and her children, and leased on a month-to-month basis to defendant Mary J. Dawson. The appeal is from a judgment for defendants based on findings that they were free from negligence, and that plaintiff was guilty of contributory negligence. ▇ Plaintiff also appeals from the

order denying her motion for a new trial. That is a non-appealable order, and for that reason the appeal therefrom should be dismissed. The order is reviewable, however, on the appeal from the judgment. (20 Cal. Jur., p. 213, sec. 139.)

It is fundamentally the contention of plaintiff that the evidence, as a matter of law, compels a judgment in her favor. Defendants introduced no evidence, but submitted the case on plaintiff's evidence. Plaintiff had examined the defendants under section 2055 of the Code of Civil Procedure, and defendants had, of course, cross-examined the witnesses called by plaintiff.

▪ Although it may be conceded that on the question of the negligence of the defendants, particularly of Mrs. Dawson, and on the question of plaintiff's contributory negligence, the evidence is in conflict, and would support a judgment for plaintiff, it is also true that there is substantial evidence, and reasonable inferences from that evidence, to support the findings of the trial court. The questions as to whether the stairway was slippery, whether it was in a dangerous condition, whether it was properly lighted, whether, if in a dangerous condition, plaintiff knew of that condition, whether plaintiff exercised due care in descending the stairway, whether, if defendants or either of them were negligent, such negligence was the proximate cause of the accident, or whether, if plaintiff was guilty of contributory negligence, such contributory negligence was the proximate cause of the accident, were all questions of fact for the trial court. On conflicting evidence the trial court decided these questions of fact adversely to the plaintiff. This being so, under well-settled principles, this court cannot, and should not, disturb the judgment.

The building where the accident occurred was a three-story residence at the corner of Fell and Steiner Streets in San Francisco. The lower story was a separate flat and had a separate entrance. The upper two stories were designed as a separate flat, consisting of nine rooms. The entrance to this flat was on Fell Street. Mrs. Coburn, prior to December, 1934, had lived in the upper flat with her family. In December of 1934 she rented the entire upper flat, furnished, to defendant Dawson, who lived there with her daughter. Mrs. Dawson, in turn, sub-rented a room on the third floor with cooking facilities to a Mrs. Page. At various

times other tenants rented other rooms from Mrs. Dawson. All the occupants and guests of the occupants of the upper flat used the Fell Street stairway. On entering the main doorway there is a small level landing. From this landing, the stairway, about three and one-half feet wide, proceeds upwards between two high, smooth walls, to a second landing. Along the left-hand side of this stairway, from the entrance landing to the upper landing, is a handrail, thirty-three inches above the middle of the tread of the stairway. The upper landing is about three and one-half feet square. At this upper landing the stairway makes a ninety degree turn to the left. There are three or four steps from this upper landing to the main upper hall. For these few steps the stairway is enclosed by solid walls extending to the floor above. There is no handrail, as such, along this stairway. Along the left-hand side as one ascends these few steps, starting from the floor line of the upper floor and proceeding upwards several feet, there is a guard railing and posts. The stairway is constructed of oak strips, and each step is of the normal height and width. According to plaintiff, the front part of the step immediately above the upper landing is rounded. The stairway has never been carpeted, was not waxed or polished, but was occasionally shellacked.

In the ceiling in the upper hallway an electric light operated from a switch was so located that it illuminated the upper three or four stairs, and also the lower longer flight. On the upper landing was a standing light operated by a pull cord.

In addition to the testimony of the witnesses concerning the construction of the stairway, the trial judge visited the premises and saw for himself the nature and type of the stairway. What he then saw and observed is, of course, evidence in the case.

On the day in question, February 12, 1936, plaintiff visited her friend Mrs. Page. She had visited Mrs. Page on two prior occasions, both during the daytime. She arrived at about 4:30 P. M., had dinner with Mrs. Page, and decided to return to her home at about 6 P. M. She put on her wraps and was carrying a bag and a small package. Mrs. Page accompanied her down the stairway from her room to the main upper hallway, and lit the light in the upper hall. The plaintiff started to descend the upper three or four steps

above the upper landing. Just as she reached the landing, or as she started to turn to go down the long flight of stairs, in some manner, she lost her balance. She tried to regain her balance and hopped down six or eight stairs, and then fell headlong down the balance of the long flight, receiving the serious injuries for which this action was brought.

Mrs. Page testified that, after turning on the light, she stood at the upper banister watching the plaintiff descend; that plaintiff was looking forward watching her step and going very slowly; that plaintiff lost her balance at the step just above the upper landing; that plaintiff tried to grab the handrail but could not reach it; that she hopped about half way down the long flight and then fell headlong. She further testified that she knew the steps were slippery, and had told the plaintiff they were dangerous.

The plaintiff testified that after reaching the upper hall, that, ''I had to have the light to go from the house. Mrs. Page switched on the light, and as I went down, I was going down—I had to go very slow because I knew the stairs were slippery, so I went down—I don't know if there were three or four steps down—and I came to the edge, to the corner, so I stopped, I made a step and I made a turn, because I knew that to my right-hand of the stairway there is a banister, and I was going to hold that—get hold of the banister. Well, my foot—I made—as I stood there I started with my left foot down, and at this very moment I knew that it was a mistake and my foot skipped and I made a double step and I missed the landing.'' She further testified that she then tried to regain her balance, and started to hop, but could not regain her balance and fell headlong. The trial judge interpreted her testimony to mean that as she got to the step immediately above the upper landing she tried to step over the edge of the landing to the top step of the long flight of stairs; that in so doing she realized she had made a mistake, lost her balance and fell. Plaintiff testified there was sufficient light for her to see, but that the steps were very ''glary'' and that she knew the stairway was slippery.

There is substantial evidence to the effect that the standing light on the upper landing was lit at the time of the accident. Mrs. Dawson testified that it was her usual custom to turn that light on at about 4 P. M., and that she had no reason to believe that she had not done so that night. She

further testified that when she heard of the accident a few minutes after it occurred she went down to see the injured woman; that the upper landing light was then lit; that she asked Mrs. Page, "Oh, Mrs. Page, were the lights on?", and that Mrs. Page replied, "Yes, Mrs. Dawson, the lights were on."

There was a direct conflict in the evidence as to whether the stairway was slippery and in a dangerous condition. Mrs. Page testified that the steps were slippery and that she had so informed the plaintiff. Plaintiff testified that the steps were slippery, and that she knew this fact as a result of her prior visits. On the other hand, the son of defendant Coburn testified that the stairway was not polished, and had only shellac as a covering. This was corroborated by other witnesses. The trial court found that the stairway "was not highly polished or waxed, or unduly slippery, and was constructed and maintained in such manner as to be reasonably safe and secure at all times." This finding is amply supported by the evidence.

Plaintiff urges that since the stairway above the upper landing had no handrail, that there was a structural defect in violation of the State Housing Act. The evidence shows that the building was constructed in 1914 or 1915 before the passage of such act by the legislature. The State Tenement House Act of 1917 (Stats. 1917, p. 1473), as well as the State Housing Act of 1923 (Stats. 1923, p. 781 [Deering's Gen. Laws, 1937, Act 8548]), provided that stairways in apartment houses thereafter constructed, or stairways thereafter reconstructed should have handrails. The same provision was carried into the 1937 amendments (Stats. 1937, p. 591). In *Watwood* v. *Fosdick*, 212 Cal. 84 [297 Pac. 881], it was expressly held that these statutes have no application to buildings or stairways constructed before the effective dates of such statutes.

There was also a direct conflict as to whether previous accidents had occurred on the stairway. There was some evidence that defendant Dawson knew of previous accidents, but she denied such knowledge. There was no evidence at all that defendant Coburn had such knowledge.

In view of this state of the record it is obvious that the basic findings that defendants were free of negligence, and that plaintiff was guilty of contributory negligence find

ample support in the record. At the close of plaintiff's case the defendants moved for a nonsuit. The motion was denied. Thereupon the defendants rested. The court then asked counsel for plaintiff: "That is the case then, Mr. Crabbe?", to which counsel replied, "Yes, Your Honor." The court then stated: "These cases are not easy, but I will order judgment for the defendant in this case. I went out and looked at that stairway and I don't think it is a model construction by any means. However, as I understand the testimony of the plaintiff, Mrs. Lee, when she reached the step above the landing, instead of stepping down on the landing, she turned on that step and attempted to go down, and slipped there. And she did not testify that she was confused, and might have thought she was on the landing. She said her foot missed the landing. And I can't conceive how a person in the exercise of ordinary care would attempt to turn that stairway in that fashion. So judgment will be for the defendant in this case." This was on March 30, 1939. After findings were prepared, but before they were signed in August of 1939, plaintiff filed a motion to set aside the submission for further argument and for the taking of further testimony. This motion was made under section 473 of the Code of Civil Procedure, and was supported by the affidavit of counsel for plaintiff. In the affidavit it is urged that the trial judge visited the premises on a bright and sunny afternoon, while the accident occurred at about 6 P. M. on a rainy dark day; that when seen by the judge the stairway was not in the same condition as it was on the day of the accident in that there was a mat on the upper landing and there was a silver stripe painted along the edge of the step above the landing. However, the record shows that before the judge visited the premises the fact that these changes had been made since the accident was developed in the evidence. Although the judge visited the premises during the daylight hours, and the accident happened after dark, we must assume the trial judge took this factor into consideration when he viewed the premises.

The affidavit also urges that affiant intended to argue the case but that when counsel for defendants submitted the cause he was taken by surprise and mistakenly and inadvertently failed to ask permission to argue. This contention presumes that by argument on the facts counsel could call

attention to facts which the motion assumes the trial judge did not consider. We cannot assume that the court abused its discretion in refusing to set the submission aside to permit counsel to argue the case. (*Bonestell* v. *Western Automotive F. Corp.*, 69 Cal. App. 719, 729 [232 Pac. 734].)

So far as the request to take additional evidence is concerned, the affidavit alleges that since the trial affiant has discovered that the Coburns purchased the property in 1921 (which appeared in the evidence at the trial) ; that in 1924 Coburn filed an application to remodel the premises, but that such application was withdrawn; that no permit was ever issued to alter the premises; that, nevertheless, the stairway was maintained in violation of the State Housing Act, *supra*. In the briefs it is recognized that, unless the stairway was reconstructed after the building was built in 1914, the State Housing Act has no application, but it is urged that plaintiff suspects that the stairway was reconstructed after the Coburns purchased the property. It is to be noted that the affidavit does not set forth that plaintiff has any evidence on this point. The affidavit is insufficient to inform the trial court of the nature of any evidence possessed by plaintiff that she desired to introduce. At most, it suggested that plaintiff's counsel desired to go on a "fishing expedition" to ascertain whether his suspicions were correct. Moreover, even if such evidence were produced, at most it would prove that defendants maintained the building in a condition in violation of state law. It would not affect the finding of the trial court, expressed at the conclusion of the trial, that the proximate cause of the injury was the contributory negligence of the plaintiff. A motion under section 473 of the Code of Civil Procedure is addressed to the sound discretion of the trial court, and will not be disturbed in the absence of a clear showing of abuse of such discretion. (*Moore* v. *Thompson*, 138 Cal. 23 [70 Pac. 930] ; *Dwyer* v. *Davis*, 120 Cal. App. 435 [8 Pac. (2d) 168].) No such abuse is shown in this case.

It is next urged that it was prejudicial error to deny the motion for a new trial. That motion was predicated on substantially the same grounds urged on the motion to set aside the submission. The record shows that the motion for a new trial was argued and thereafter denied by reason of the expiration of the sixty-day period provided by section

660 of the Code of Civil Procedure. Plaintiff seems to argue that she had a statutory right to affirmative action by the trial court, and that she was prejudiced by the failure of the trial judge to act. No authorities are, or can be, cited to support such an argument. A denial of a new trial by operation of law, under Code of Civil Procedure, section 660, *supra*, is just as efficacious as a denial by affirmative act.

The last point urged is that the trial court committed error in failing to find on the question as to whether plaintiff assumed the risk, a defense pleaded in the answers of defendants. The court did find that plaintiff was guilty of contributory negligence. The so-called doctrine of assumption of risk is merely one phase of the doctrine of contributory negligence. No error was committed in failing to find specifically on the doctrine of assumption of risk.

The appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Ward, J., and Goodell, J., *pro tem.*, concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 19, 1941.