[Civ. No. 16620.   First Dist., Div. One.   May 15, 1956.]

MERLE GLEN SNYDER et al., Appellants, v. WILLIAM HOLLINGBERY et al., Respondents.

Emmet F. Hagerty and Richard C. Shortall for Appellants.

Keith, Creede & Sedgwick and Barfield & Barfield for Respondents.

WOOD (Fred B.), J.—Robin Dumont died from asphyxiation in a fire at the hotel where she lived. Her children brought this action for damages against William Hollingbery (owner of the hotel) R. Shephard (lessee-operator of the hotel), Frank Cascellini (husband of the manager of the hotel and in charge of it at the time of the fire) and V. H. Montgomery (a pest control operator who had used chemicals at the hotel shortly before the fire).

Verdict and judgment went for the defendants and the plaintiffs have appealed. They make no claim that the evidence was insufficient to support the verdict. They do claim that errors were committed in the exclusion of certain evidence and in the refusal of certain instructions offered by them.

 (1) *The failure of the court to order a view of the premises by the jury furnishes no basis for a reversal.*

During defendant's case in chief the court asked whether a view of the premises should be taken but plaintiffs' counsel said he thought not because of some changes in the structure of the building and that he expected to bring in some photographs, and did introduce some 30 photographs which showed conditions as they existed right after the fire. Later, he suggested that a view would be desirable "because we have

no adequate map of the place." Defense counsel objected because of changes that had been made during the 14 months that had elapsed since the fire (particularly the building of steps from the floor to the fire escape exit window, which was 43 inches from the floor) and agreed to have a map made. Thereupon the court denied the motion. A map drawn to scale was later put in evidence.

We find in this no abuse of the discretion vested in the trial court by section 610 of the Code of Civil Procedure, especially in view of the changed conditions and lapse of time. (*McDonald* v. *Cantley,* 214 Cal. 40, 45-46 [3 P.2d 552]; *Parsell* v. *San Diego Consol. G. & E. Co.,* 46 Cal.App. 2d 212, 217 [115 P.2d 539].)

■ (2) *It was not error for the court to refuse instructions that were based upon the provisions of sections 16560 and 16710 of the Health and Safety Code.*[1]

One of these instructions would have informed the jury that section 16560 declares that the level of the sill of a door or window giving access to a fire escape balcony shall not be more than 30 inches above the adjoining floor in the building.[2] This provision, the proof demonstrates and plaintiffs concede, was enacted after this building was constructed.[3]

The other instruction would have given the jury the text of section 16710, which requires a building of the nature and size of that here involved to have an approved automatic or manually operated fire alarm system, so designed that all occupants may be warned simultaneously. This also was refused as a nonretroactive requirement enacted after the construction of the building here involved.

The basic interpretative clauses of the State Housing Act are furnished by sections 15154-15157 of the Health and Safety Code, which declare that in any "structural addition or . . . alteration, repair, installation, or change in . . . or

---

[1]Plaintiffs also predicate error upon the asserted refusal of the court to allow these code sections to be introduced into evidence.

They do not cite, nor have we found, a passage in the transcript which shows the making or refusal of any such offer.

Moreover, these statutes, to the extent that they may have furnished standards of conduct for the defendants or any of them, presented matters of law for the instruction of the jury by the court, not items of fact to be presented to the jury in the form of evidence.

[2]The window sill in question was 43 inches above the floor.

[3]All parties agree that the building here involved was erected not later than 1909 and that no major structural changes in the building were subsequently made. There is no evidence that any minor structural changes have been made.

reconstruction of, any building, such new work shall meet all the requirements of this part'' [the State Housing Act] (§ 15154); a building not erected for use as an apartment house, hotel, or dwelling, ''which is converted to or altered for such use, shall conform to all the provisions of this part affecting an apartment house, hotel, or dwelling, as the case may be'' (§ 15155); any apartment house, hotel, or dwelling ''which is moved'' shall ''conform to all the provisions of this part affecting any such building pertaining to'' percentage of unoccupied areas, heights, and size of courts and yards (§ 15156); a building which is damaged by fire or the elements to an extent in excess of 60 per cent of its physical properties shall ''[i]f it is reconstructed'' conform ''to all the provisions of this part'' (§ 15157).

These provisions are implemented by section 15351 which requires a permit before a person may ''erect, construct, reconstruct, move, convert, or alter any building within a city,'' and by section 15356 which requires the appropriate building department to examine the plans and specifications and to issue the permit if it appears the proposed work will not result in a violation. These provisions are followed by others which provide for a certificate of final completion and an occupancy permit. ''The result of this rather elaborate procedure is to make the numerous provisions of the Building Code [State Housing Act] applicable to new construction or alterations, and the statute as a whole is, and has been interpreted, as applying to, and enforceable as to new or reconstructed buildings.'' (10 Ops.Cal.Atty.Gen. 143, 144: opinion rendered October 6, 1947. See also *Lee* v. *Dawson*, 44 Cal.App.2d 362, 367 [112 P.2d 683], and *People* v. *Neff*, 117 Cal.App.2d 772, 779-780 [257 P.2d 47].)

With reference particularly to section 16710 (added to the code by chap. 1493 of the Statutes of 1947, p. 3081 at p. 3087), we observe that upon introduction Assembly Bill Number 753 (which upon passage became chap. 1493 of 1947) expressly provided that section 16710 would apply to every ''apartment house . . . heretofore or hereafter constructed'' but was amended on June 11, 1947, by deleting the words ''heretofore or hereafter constructed'' (Assembly Journal, regular session of 1947, p. 4393, Amendment No. 51, at p. 4395). This we deem a clear indication of a specific legislative intent not to apply this section to a building already constructed, particularly in view of the fact that in respect

to certain code sections (such as 16602 and 17830) the words "heretofore or hereafter constructed" remained in Assembly Bill Number 753 throughout the course of its passage.

We conclude, therefore, that the trial court correctly ruled that neither section 16560 nor section 16710 applied to the building here involved.

■ (3) *We find no error in the denial of an offer to prove a certain city fire department report which recommended that steps be placed at the window which led to the fire escape.*

Testimony that after an inspection of the hotel by a representative of the fire department certain recommendations concerning the height were made on July 3, 1951, to a Mrs. Kerchek was stricken as not communicated to and thus not binding upon any of the defendants. Shephard did not become a lessee until June 1, 1952, and there was no evidence connecting Mrs. Kerchek with any of the defendants.

The report itself, which was in writing, does not appear to have been offered in evidence.

■ (4) *It was not error to refuse plaintiffs' offers to prove that the exit to the fire escape here involved was at a higher distance from the floor than customarily provided in similar buildings in the community.*

Plaintiffs complain of the asserted refusal of the trial court to admit evidence to the effect that in buildings of the type here involved, it is standard practice to place openings to fire escape balconies nearer the floor level than the 43 inches in the instant case.

Plaintiffs' proposal in this regard came in the form of an offer of proof, plaintiffs' counsel saying that he wished to ask Chief Kruger of the fire department "what the fair and reasonable standard is in this community from a standpoint of fire prevention as to the height of a window sill." Later, counsel explained: "My offer of proof would be to bring in Chief Kruger, who is the head of the Fire Prevention Bureau of the city, who makes the regular inspections and recommendations for the safe and reasonable standard of maintenance of buildings, and the fire exits of such buildings, and I will ask him the question which I did before, from his position based upon his experience and knowledge, what his recommendation, if any, would be upon the discovery in a hotel of a window sill 43 inches in height from the floor level, which go off onto a fire escape." This offer was refused upon the ground that an "expert cannot be asked if a thing is safe or not,"—a correct ruling.

Subsequently plaintiffs' counsel revised his offer of proof, as follows: "We would like to make an offer of proof that if we call one of the experts from the fire department that they would be able to testify that as a fact they have observed in the older buildings and in the modern ones that the majority of them follow a common rule of safety requirements, wherein the windows going out to the fire escape are less than 43 inches in height from the floor. Most of them approximately two feet and a half in height." The court informed counsel he would have to be more specific; whereupon, counsel said: "they would testify that as a matter of safety that the average standard of conduct in this area is to maintain fire escape windows with sills——" and the court responded: "That isn't specific enough. What do you mean by the average standard of conduct?" to which counsel replied: "Height of windows in hotels." The court then asked: "How many have they seen?" Counsel, apparently, had no answer to the last question. The court added: "I think the fact that there is a majority doesn't mean it is the standard," and that "it would be totally immaterial as to hotels constructed since the statute went into effect," and denied the offer.

We see no impropriety in this denial. Plaintiffs failed to convince the trial court that their proposed witness had made sufficiently adequate observations to enable him to speak as an expert on this subject, and the offer was not confined to buildings constructed prior to the enactment of the statute which requires the inside sill of a window giving access to a fire escape balcony to be not more than 30 inches above the adjoining floor. (Stats. 1917, ch. 736, p. 1422, § 53, at p. 1450, and ch. 738, p. 1473, § 57, at p. 1503; now Health & Saf. Code, § 16560.) The hotel here involved was built not later than 1909.

(5) *It was not error to refuse the instructions which plaintiffs requested on the subject of res ipsa loquitur.*

Plaintiffs have not directed our attention to any of their instructions which they claim presented the doctrine of res ipsa loquitur. Defendants have brought to our attention three of plaintiffs' proposed instructions which bear upon the subject.[4]

---

[4]These instructions read, respectively, as follows:

Plaintiffs' No. 1: "From the happening of the death involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct

The first sentence of plaintiffs' proposed instruction Number 1 and the second sentence of their Number 2B erroneously assumed that the accident occurred in the manner claimed by plaintiffs[5] and required the jury to indulge in the inference that defendants were negligent. Yet, there was substantial evidence that the fire (which started on the first floor from some unknown cause) spread rapidly upward through the stairways and elevator shafts to the fourth floor (where decedent resided) and that the fumes which asphyxiated her found vent through the door to her room, which she or her roommate, Mary Austin, presumably opened, and to the outside through a window in her room which she or her roommate did open; that a room across the hall (the door to which remained closed) received no visible damage, and other rooms where the doors remained closed received no visible damage; with the door and window of decedent's room open it "was like the chimney in a fireplace"; if the door had remained closed her room would have been in

on the part of the defendants. That inference is a form of evidence, and that [if] there is no other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiffs. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendants to rebut the inference by showing that they did, in fact, exercise ordinary care and diligence or that the death occurred without being proximately caused by any failure of duty on their part."

Plaintiffs' No. 2: "I instruct you that when a thing which causes death is under control and management of a defendant, and the death of [is] such as in the ordinary course of things does not happen if those who have the management use ordinary care, it affords a reasonable evidence in the absence of explanation by the defendant that the death arose from want of ordinary care. Therefore, if you find that the defendant or defendants had exclusive control and management of the Bay Meadows Hotel, then I instruct you that the death caused by the fire in said hotel, in the absence of explanations, arose from a want of ordinary care on the part of said defendant or defendants in the control and management of said Bay Meadows Hotel."

Plaintiffs' No. 2B: "I instruct you that in this case the burden of proof is on the plaintiffs to show by preponderance of evidence that the death was caused by the negligence of defendants.

"But from the occurrence of the death in this case, a presumption of negligence arises, which throws upon the defendants the burden of proving that the injury was not due to their negligence."

[5]Plaintiffs did not allege that any of the defendants negligently or otherwise caused the fire.

They did allege that defendants negligently (1) caused the fire to spread and intensify, (2) failed to provide a safe means of egress, (3) failed to notify decedent of the fire escape, (4) permitted inflammable materials to be placed on the premises, (5) caused numerous coats of paint to be placed over all available means of exit, (6) failed to notify decedent of the fire, and (7) failed to notify arriving firemen of decedent's presence in the hotel.

substantially the same condition as the room across the hall, the door to which remained closed. In these circumstances it would have been error to *require* the jury to indulge in the inference that the defendants were negligent and to cast upon them the burden of proving they were not. (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432, 435 [260 P.2d 63].)

These two instructions were additionally erroneous in that they informed the jury that a presumption instead of an inference arose. Instruction 2B did so expressly; instruction Number 1, by implication. (See *Hardin* v. *San Jose City Lines, Inc., supra,* 41 Cal.2d 432, 436.)

Each of the proposed instructions by its terms applied to all of the defendants and thus was too broad in its coverage. There was no evidence that defendant Hollingbery had exclusive or any right of control over the premises. Plaintiffs, in their opening brief, state that at the time of the fire "Mr. R. Shephard was the lessee in possession of the . . . hotel." They direct our attention to no evidence and none has come to our attention that would warrant either a presumption or an inference that Hollingbery had any element of control over the premises. Plaintiffs' proposed instructions Number 1 and Number 2B would erroneously have cast upon Hollingbery the burden of proving that he was not negligent. Plaintiffs' instruction Number 2 although predicated upon a finding by the jury "that the defendant or defendants had exclusive control and management of the . . . hotel" was potentially confusing to the jury as concerned Hollingbery and as to him had no foundation in the evidence. Even if these instructions had been proper if limited so as to apply only to the other defendants, it was the duty of the plaintiffs, not of the court, to make such a limitation.

■ Furthermore, instruction Number 2 is inapplicable to the situation presented by the issues and the evidence, particularly the second sentence which would have told the jury that if it found that "the defendant or defendants had exclusive control and management of the Bay Meadows Hotel" then "the death caused by the fire in said hotel" in the absence of explanation "arose from a want of ordinary care on the part of" such defendant or defendants. When none of the defendants is charged with having caused the fire (which the evidence shows was of unknown origin) and one of the charges is that they caused it to spread and intensify.

coupled with the evidence tending to show the disastrous effect of the draft created by the opening of the door and window in decedent's room (over which decedent and her roommate had control), the mere element of control and management of the hotel would seem to furnish an illogical, inapt and insufficient basis for bringing the doctrine of res ipsa loquitur into play. This does not meet the three requirements for the application of the doctrine, which are "(a) There is a basis of experience, either common to the community or brought out in evidence, from which it may reasonably be concluded that the accident is of a kind which does not normally occur unless someone has been negligent. (b) It must be caused by an agency or instrumentality within the exclusive control of the defendant. (c) It must not have been due to any voluntary action or contribution on the part of the plaintiff." (*Bauer* v. *Otis,* 133 Cal.App.2d 439, 443 [284 P.2d 133].)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.