[Civ. No. 18151.   First Dist., Div. One.   Sept. 30, 1959.]

K. ANDERSON, Appellant, v. COUNTY OF SANTA CRUZ et al., Respondents.

SIDNEY H. GANDRUP et al., Appellants, v. COUNTY OF SANTA CRUZ et al., Respondents.

Lange & Rockwell and Harry O. B. Farris for Appellants.

Grunsky & Pybrum and Elmer Pybrum for Respondents.

WOOD (Fred B.), J.—Plaintiffs are Sidney and Marie Gandrup, owners of certain real property that was damaged by fire, and K. Anderson, assignee of an insurer who reimbursed the Gandrups for a portion of their loss. They claim that the alleged damage was the proximate result of the spread of fire from a drainage ditch operated and maintained by the defendants across the Gandrup property. They seek to hold the defendant county under the Public Liability Act, and the other defendants (employees of the county) for negligence in the setting and supervision of the fire along the county's ditch right of way.

The verdict of the jury was for the defendants. Plaintiffs have appealed, claiming insufficiency of the evidence, errors in the giving and refusing of instructions, and erroneous denial of their motion for a new trial.

(1) *Does the evidence support the verdict? Yes.*

The ditch extends north and south through plaintiffs' land. A section was cleared by burning conducted by two county employees. One of them cut the weeds and grass with a scythe. The cuttings would fall into the bottom of the ditch. The other workman, using mobile water sprinkling equipment, sprayed the bank before the burning and the ashes after the burning. They burned for a distance of only about 10 feet at a time. They worked in this fashion on the morning of October 11 and again on the morning of October 13. They returned in the afternoon of each of those days, made an inspection and found no sign of fire. They repeated such inspections about five times, at intervals, between the 13th and the 26th of October, 1954, the day of the burning of plaintiffs'

property. Upon each such occasion, they found no sign of fire in the ditch. There was evidence that this method of burning was standard approved practice. A burning permit had been obtained and the nearby forestry station had been notified of the general area in which the burning would be done. Such evidence would support an inference of non-negligence upon the part of the county employees.

In thus cleaning the ditch, the defendants started near plaintiffs' north line and proceeded about 800 feet southerly where they encountered water in the ditch and stopped. This point was about 450 feet north of the spot where plaintiffs claim the fire of October 26 started. The topsoil is underlaid by a peat formation, through which, according to plaintiffs' theory, the fire traveled underground. But there is evidence that it would travel only about 4¼ feet in seven days and that the peat could not burn longer than 10 days without igniting the dry grass and weeds on the surface. Also, three eye-witnesses testified that on October 26 the fire started in an area south of plaintiffs' property, considerably west of the ditch, well over one thousand feet south and west of the southerly end of the burned section of the ditch. This evidence would support a finding that the defendants' ditch-burning was not the cause of the fire that burned plaintiffs' property on the 26th of October.

Plaintiffs invoke the testimony of a number of their witnesses which conflicted significantly with the evidence above summarized. That, however, merely produced a conflict which it was the function of the jury to resolve and which the jury did resolve in favor of the defendants.

The same evidence would support a finding that the injuries to plaintiffs' property did not result from a "dangerous or defective condition of public property" of the county nor from such a condition of such property, if any, that was known to the persons "authorized to remedy the condition" or of which condition such persons had constructive notice (Gov. Code, § 53051.)

(2) *Was it prejudicial error to deny plaintiffs' instruction on res ipsa loquitur? No.*

■ Two of plaintiffs' instructions on this subject erroneously took from the jury the question whether the fire that burned plaintiffs' property proximately resulted from the defendants' ditch-burning operation. Each would have told the jury that "from the happening of the fire involved in

this case, as established by the evidence,'' an inference arose ''that the proximate cause of the fire was some negligent conduct on the part of the defendants.''* If the court had given such an instruction it would have usurped the jury's function of resolving the conflict of evidence on the question of a causal connection between the ditch-burning and the fire that consumed plaintiffs' property. That, clearly, would have been a gross error. (*Snyder* v. *Hollingbery,* 141 Cal.App.2d 520, 526-527 [297 P.2d 485]; *Hardin* v. *San Jose City Lines, Inc.,* 41 Cal.2d 432, 435 [260 P.2d 63].) ■ Where the evidence is conflicting or subject to different inferences, it is for the jury under proper instructions to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur are present. (*Seneris* v. *Haas,* 45 Cal.2d 811, 826-827 [291 P.2d 915, 53 A.L.R.2d 124], and authorities there cited.) [4] The other instructions of plaintiffs on this subject were so closely tied into those just discussed, by specific cross-references, they would have been incomplete if given alone. They were inseparable without considerable revision as to form and content. The trial court was under no duty to undertake such a revision. It is, therefore, unnecessary to decide whether or not instructions on this subject, if properly expressed (as these were not), should have been given if requested.

(3) *Did the trial court give prejudicially erroneous instructions? No.*

■ Defendants requested an instruction on the exercise of ordinary care (based on BAJI 101E) which used the words ''contributorily negligent'' as well as ''negligent.'' Before giving it the court crossed out the words ''contributorily negligent'' but in reading to the jury included them where they occurred in the forepart of the instruction. Realizing the error (there was no issue of contributory negligence in this case) the judge stopped and said ''Excuse me, I will strike all reference to contributory negligence as was previously indicated, as that is not an issue in the case. So, let me reread this instruction.'' He then reread the instruction, omitting all reference to contributory negligence. Manifestly, any harmful effect which the inadvertent use of the word ''contributorily'' might otherwise have had was promptly and effectively erased.

Plaintiffs criticize an instruction which informed the jury

---

*Limited, in one of the instructions, to the ''individual'' defendants.

that in the maintenance of the drainage ditch area the county is not a guarantor of the property of adjoining residents or property holders. The criticism seems to be that it would have been appropriate if plaintiffs had been injured while using the ditch but not otherwise. We see no merit in this point.

Concerning instructions on the Public Liability Act, plaintiffs criticize the use of certain words and phrases as a source of confusion to the jury. Our reading of those instructions gives us no such impression.

(4) *Was prejudicial error committed in the refusal of certain of plaintiffs' instructions? No.*

One of plaintiffs' rejected instructions defined a private nuisance and the liability of one who commits such a nuisance. Whether or not this rejection was erroneous has become moot in view of the verdict against plaintiffs in respect to their cause of action predicated upon the Public Liability Act. This is so for the reasons stated and upon the basis of the authorities cited, in respect to the fourth count of the complaint, in the recent case of *Behr* v. *County of Santa Cruz*, 172 Cal.App.2d 697, 710-714 [342 P.2d 987].

Another of the rejected instructions was intended to present the issue of inverse condemnation. Even if the facts of this case warranted the giving of such an instruction, the instruction presented by plaintiffs shot wide of the mark. It would have imposed absolute liability upon the county if the jury were to find that the county caused "the doing of work according to plans theretofore adopted and authorized" and if the work was performed "in conformity with the plans" and if "the work thus planned or authorized" *resulted* "in an injury to adjacent property." This would have imposed absolute liability regardless of fault. The duty of the sovereign to compensate when "private property" is "taken or damaged for public use" (State Const., art. I, § 14) is not that broad in scope. "Section 14 . . . is designed not to create new causes of action but only to give the private property owner a remedy he would not otherwise have against the state for the unlawful dispossession, destruction or damage of his property. The state is therefore not liable under this provision for property damage that is *damnum absque injuria.* If the property owner would have no cause of action against a private citizen on the same facts, he can have no claim for compensation against the state under section 14 . . . The effect of section 14 is to waive the immunity of the state where property is taken or damaged for public purposes.

To bring his complaint within the provision, the plaintiff must show not only a taking or damaging for a public use but also that it is actionable under the general law.'' (*Bauer* v. *County of Ventura,* 45 Cal.2d 276, 282-283 [289 P.2d 1].)

We find no error in the rejection of the instruction under discussion.

Plaintiffs question the rejection of 12 other instructions the subject matter of which appears to have been presented to the jury quite adequately in instructions which the court did give. The variances in form and wording do not appear significant to us. Certainly, plaintiffs suffered no prejudice.

(5) *Did the court err in denying plaintiffs' motion for a new trial? No.*

The motion for new trial was predicated upon newly discovered evidence; i.e., two witnesses whose testimony would ''establish that the fire did not start in an area some Two Hundred (200) yards below the house'' on plaintiffs' property, according to the affidavit filed in support of the motion.

The affidavit declared that these witnesses were discovered after May 28, 1957, the last day of the trial, nearly two years after plaintiffs filed their complaint. Such testimony would be merely cumulative and plaintiffs offer no convincing explanation of their delay in making the discovery. We find no basis for holding that the denial of the motion was an abuse of discretion.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.