[Civ. No. 17388. First Dist., Div. Two. July 3, 1957.]

HELEN MARKWALDER, Respondent, v. ARNOLD LEONHARD et al., Appellants.

Lounibos & Lounibos and Freitas, Allen, McCarty & Bettini for Appellants.

Nichols, Richard, Williams, Morgan & Digardi for Respondent.

KAUFMAN, P. J.—A jury returned a verdict in favor of plaintiff, Helen Markwalder, in the sum of $11,366.02 for damages sustained by her when she was forced to jump from a second story window in defendant's lodging house to escape a fire. Plaintiff suffered injuries and a loss of personal property. A judgment based upon the jury's verdict was entered in favor of plaintiff, and defendants appeal.

On March 9, 1955, appellant Arnold Leonhard was the

owner of a building located at Grove Street and San Rafael Avenue in San Rafael, California. At that time the property was leased to and operated by appellants Jerry Harrigan and Julia Harrigan as a lodging house under the name of "The Lodge." On the same date, respondent Helen Markwalder, was a registered guest in the lodging house, occupying a room on the second floor of the building.

The Lodge was a large wooden structure composed of three floors with a large basement area. It was erected approximately 80 years ago as a private dwelling by the Sloss family. In 1933 the Evangelical Benevolent Association purchased the building from the Sloss estate and it was used as a "convalescent home" or a "home for the aged" until 1943. Appellant Arnold Leonhard managed the home for the evangelical society until 1943, when he purchased the home and began operating it as a public lodge.

From June 1, 1951 until June 30, 1952, the building was leased to the Pacific Telephone and Telegraph Company for the lodging of their employees. In July 1952, the premises were leased to Carl Lindey and were used for general lodging purposes. In December 1953, the lease was assigned to defendants Harrigan who continued using it as a lodge.

The first time a license was issued from the city of San Rafael to use the building as a lodging house was in December 1952.

There was no fire alarm system nor sprinkler system in the building. In 1935 or 1936, a fire alarm system to notify the fire department, but not the guests, was installed in The Lodge. On May 7, 1942, the city of San Rafael installed a master fire alarm box on the corner of San Rafael Avenue and Grove Street, but did not connect this box to the alarm system in The Lodge because the wiring in the building was installed wrong. There were two fire escapes, both connecting with the second floor and located on the south side of the building. One fire escape was located near the center of the building and the other was towards the rear of the building. To reach either fire escape it was necessary to go through a tenant's room. (Plaintiff's Exhibits 6, 7 and 8.) A garden hose was attached to a faucet located on the first floor of the structure. There were two fire extinguishers on each floor. None of the drapes, furnishings or hangings in the living room were of flame-retardant material. None of the interior stairways were enclosed.

On March 9, 1955, a fire of unknown origin was discovered

shortly after 1 a. m. by a guest on his return to the premises. The first had started on a horse hair sofa in the living room. The guest notified the Harrigans of the fire by running to their room yelling, "The place is on fire, hurry up." Mr. Harrigan ran down the hall, saw what was burning and then ran back for the hose. He was only able to get within 10-15 feet of the fire due to the length of the hose. When water was applied to the fire it was accelerated. There was testimony to the effect that the fire was of incendiary origin. After the attempt to put out the fire proved unsuccessful, Mrs. Harrigan ran upstairs to warn the guests. The fire was spreading so rapidly she only had time to run down the hall on the second floor yelling fire. She did not open any of the doors nor did she warn the guests on the third floor.

When Mr. Harrigan discovered he could not put the fire out he attempted to call the fire department. There were only pay phones in The Lodge. After searching unsuccessfully for a coin he ran to the annex to phone. By this time a neighbor had reported the fire.

At the time the fire was discovered, Helen Markwalder was asleep in an upstairs bedroom. The fire spread rapidly and by the time she was aroused she was trapped in her room. To escape it was necessary for her to jump through a window to the ground, a distance of approximately 30-32 feet. She sustained serious injuries. In addition, she lost personal belongings. The building was completely burned.

 Appellants claim error with respect to the giving of the following instructions to the jury:

"At the time of the accident involved in this case, the following sections of the Health and Safety Code of the State of California were in full force and effect and provided as follows:

"*Section 16710.* Installation of fire alarm system: Structures in which required: Design. Every apartment house three (3) stories or more in height and containing more than 15 apartments and every hotel three (3) stories or more in height containing 20 or more guest rooms shall have installed therein an approved automatic or manually operated fire alarm system designed to warn the occupants of the building in event of fire. Such fire alarm system shall be so designed that all occupants of the building may be warned simultaneously.

"*Section 16713.* Drapes to be of incombustible material or treated with flame retardant. Any drapes, hanging, curtains, or similar decorative materials in any amusement, entertain-

ment, bar, reception, lobby, or public dining room, or room used for similar purposes, or along the walls or ceiling of any public hallway, or along the walls or on the soffits of any interior public stairway, in any apartment house or hotel shall be of incombustible material, or shall be treated and maintained in a flame retardant condition by means of a flame retardment as defined in Section 13115 of this code.

"*Section 16430.* Interior stairways to be enclosed. Every interior public stairway in an apartment house or hotel three or more stories in height hereafter constructed shall be enclosed as specified in this article.

"*Section 16433.* Construction materials for enclosing walls: Wooden or semifireproof buildings. In the case of any wooden or semifireproof hotel or apartment house the enclosing walls shall be constructed of no less fire resistive materials than metal lath with ¾ of an inch of plaster on both sides of wooden studs.

"*Section 16435.* Enclosing walls to extend from floor of lowest story to ceiling of topmost story. The enclosing walls shall extend from the floor of the lowest story served to and including the ceiling of the topmost story served.

"Conduct which is in violation of State Health and Safety Code Sections just read to you constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. In this connection you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induce him, without moral fault, to do otherwise.

"The law placed the duty of compliance with the state law upon both the owner of the premises and the lessees of the premises. Therefore, if you find that the premises failed to conform to the requirements of any of the said statutes, you must further find that both the defendant owner and the defendant lessees violated such statute."

The above sections were enacted in 1947. The building in question was erected as a private dwelling approximately 80

years ago. In 1933 it was converted into an old age home by the Evangelical Benevolent Association. It remained an old age home until 1943, when it was purchased by appellant Leonhard and was at that time converted into a public lodging house. In 1951 Leonhard leased the home to the Pacific Telephone and Telegraph Company. For the next year the home was not open to the public. It was used exclusively by the telephone company's employees. In 1952, it was again used as a public lodging house and a permit was acquired by Leonhard for that purpose. *Rau* v. *Redwood City Women's Club*, 111 Cal.App.2d 546 [245 P.2d 12]; *People* v. *Neff*, 117 Cal.App.2d 772 [257 P.2d 47]; and *Lee* v. *Dawson*, 44 Cal. App.2d 362 [112 P.2d 683], cited by appellant, are cases in which the structure involved has been constructed for the purpose it was being used for at the time of the accident. In this case, the structure was originally a private dwelling and had been converted to another use. However, its conversion took place in 1943 when the change from an old age home to a lodging house occurred. The argument is advanced by respondent that a change of use occurred in 1952 when the lodge was used by the Pacific Telephone and Telegraph Company. The telephone company used the building to lodge their employees. It, therefore, cannot be held a change of use occurred then. The building was used as a lodge, for either the general public or a specific group, from 1943 until the date of the fire.

Sections 16710, 16713, 16430, 16433 and 16435 were enacted in 1947, the change of use took place in 1943. It has been held as a general rule that building code provisions are not retroactive.

The court in *Snyder* v. *Hollingbery*, 141 Cal.App.2d 520 [297 P.2d 485], stated as follows:

"With reference particularly to section 16710 (added to the code by chapter 1493 of the Statutes of 1947, p. 3081 at p. 3087), we observe that upon introduction Assembly Bill Number 753 (which upon passage became chap. 1493 of 1947) expressly provided that section 16710 would apply to every 'apartment house . . . . heretofore or hereafter constructed' but was amended on June 11, 1947, by deleting the words 'heretofore or hereafter constructed' (Assembly Journal, regular session of 1947, p. 4393, Amendment No. 51, at p. 4395). This we deem a clear indication of a specific legislative intent not to apply this section to a building already constructed, particularly in view of the fact that in respect

to certain code sections (such as 16602 and 17830) the words 'heretofore or hereafter constructed' remained in Assembly Bill Number 753 throughout the course of its passage.''

Therefore, it was error for the court to give the above instruction.

It is claimed this error was cured. These sections of the Health and Safety Code are similar to sections in the San Rafael Building Code. Only the 1952 edition of the building code was put into evidence. There was no evidence showing these provisions existed in a 1942 edition of the building code or that such edition had been adopted by the city of San Rafael before the change of use took place in 1943. Statements made by counsel in argument to the court in the absence of the jury to the effect that a building code containing these provisions had been adopted in 1942, are not evidence. The court cannot take judicial notice of municipal ordinances, (*Marysville Woolen Mills* v. *Smith*, 178 Cal. 786, 791 [175 P. 13]) they must be proved like any other fact.

 In view of the foregoing, it is the conclusion of the court that the instruction on sections 16710, 16713, 16430, 16433 and 16435 was prejudicial error. It is, therefore, not necessary to discuss other arguments presented by appellants.

In view of the foregoing the judgment must be reversed.

Judgment reversed.

Dooling, J., and Draper, J., concurred.

A petition for a rehearing was denied August 2, 1957, and respondent's petition for a hearing by the Supreme Court was denied August 27, 1957. Gibson, C. J., and Carter, J., were of the opinion that the petition should be granted.