[Civ. No. 17786.   First Dist., Div. Two.   Mar. 5, 1959.]

GEORGE SCHAFFER et al., Respondents, v. CLAREMONT COUNTRY CLUB (a Corporation), Appellant.

Donahue, Richards & Gallagher for Appellant.

Boccardo, Blum, Lull, Niland & Teerlink and Edward G. Niland for Respondents.

§

DOOLING, J.—This is an appeal from the judgment entered upon a jury verdict for plaintiffs in an action for the wrongful death of their son.

The evidence shows that on March 31, 1955, respondents' 8-year-old son, Gary, with two companions went to an area known as "Bilger Quarry" near his home. Bilger Quarry had been operated in the past as a rock quarry and after the property was acquired by appellant in the 1930's, the quarrying operations ceased. Thereafter the excavation created by the quarrying operation was used by appellant as a reservoir for water to irrigate its adjoining golf course. The reservoir was approximately 500 to 600 feet in length and 300 feet in width, and the depth of the water at its deepest was about 70 feet. The banks or sides of the reservoir were in some places steep and rose 60 to 70 feet above the water level. In the area where the accident occurred the cliff was composed of "crumbly" rock or shale.

At the time appellant acquired the reservoir a wire mesh fence approximately 6 feet in height topped by barbed wire strands was constructed, surrounding the area. The evidence was conflicting as to the state of repair of this fence on March 31, 1955, but there was evidence that the fence sagged in places and that there were holes in and under it. Signs stating "no trespassing" were posted in the area by appellant.

Employees of appellant and residents of the area adjacent to the reservoir had on numerous occasions seen children swimming in the reservoir or playing in the area. Gary's father had cautioned him not to play in this area.

Gary and two companions had entered appellant's property on the day before the accident. The next day they returned and Gary climbed or jumped over a sagging portion of the fence while his friends crawled under. They went to the cliff and Gary with his dog climbed down the cliff and returned to the top. The boys noticed what appeared to be a raft floating in the water and in an effort to reach the raft they threw down a rope which caught on a rock. As Gary attempted to climb down to free this rope the shale or rock gave way and he fell into the reservoir and drowned. His body was recovered in 70 feet of water lodged beneath some brush.

Appellant's demurrer to the complaint was overruled. Motions for judgment on the pleading, summary judgment, nonsuit, directed verdict and judgment notwithstanding the

verdict were denied. A motion for a new trial was denied contingent upon respondents' consent to a reduction of the judgment from $30,000 to $20,000.

On appeal it is contended that the trial court committed error in denying the various motions because 1. the attractive nuisance doctrine was inapplicable as a matter of law and 2. section 24400 of the Health and Safety Code was inapplicable as a matter of law and therefore the doctrine of negligence per se did not apply.

Section 24400, Health and Safety Code, provides, so far as here material:

"Every person owning land in fee simple . . . who knowingly permits the existence on the premises of any abandoned mining shaft, pit, well, septic tank, cesspool, or other abandoned excavation dangerous . . . to minors under the age of twelve years, who fails to cover or fence securely any such dangerous abandoned excavation and keep it so protected, is guilty of a misdemeanor."

The trial court read this section to the jury, instructed that if a party violated this section a presumption arises that he was negligent, and left it to the determination of the jury as a question of fact whether "the Bilger Reservoir was an abandoned pit or excavation."

Appellant argues that under the undisputed facts of this case it was established as a matter of law that its reservoir, although located in an excavation which was the result of quarrying operations long since abandoned, was not an abandoned pit or excavation within the meaning of the statute. We have concluded that appellant's contention in this respect is correct.

The evidence establishes without contradiction that the excavation is, and for many years has been, continuously used as a reservoir from which appellant regularly takes water by means of a pump installed therein for use in the irrigation of its golf course. For whatever reason the Legislature in enacting section 24400 expressly limited its application to *abandoned* excavations. An excavation which is being put to a continuously useful purpose can by no stretch of the imagination be regarded as an abandoned excavation.

Respondents refer to it as an abandoned quarry. It has, it is true, been abandoned as a quarry, but it has not thereby become an abandoned excavation. As an excavation it is being continuously used as a reservoir and it is no more abandoned than any other artificial excavation which is similarly used.

If it had been originally excavated for the purpose of using it as a reservoir we assume that nobody would claim so long as it continued to be put to that use that it was an abandoned excavation. The fortuitous circumstance that it was originally excavated in quarrying operations cannot change the effect of its present use as a reservoir. To hold otherwise would mean that if there were two identical excavations both used as reservoirs in identical fashion, one of which was originally excavated for use as a reservoir and the other originally excavated in quarrying operations, section 24400 would apply to the one and not to the other. So stated the facts carry their own refutation. The only case construing the section supports the conclusion that an excavation being regularly put to a reasonable use is not abandoned within the meaning of this section. (*Flick* v. *Ducey & Attwood Rock Co.*, 70 Cal.App. 2d 70, 75-76 [160 P.2d 569].) It was therefore error prejudicial to appellant to so instruct the jury that it might bring in a verdict against appellant on the theory of a violation of section 24400, Health and Safety Code.

The case was also given to the jury under instructions embodying the so-called attractive nuisance doctrine. Appellant argues that the facts of this case are not sufficient as a matter of law to make that doctrine applicable.

In two recent decisions of our Supreme Court the court has expressly adopted the statement of the attractive nuisance doctrine in section 339, Restatement of Torts as correctly expressing the elements necessary to satisfy the rule in this state. (*Courtell* v. *McEachen*, 51 Cal.2d 448, 457-458 [334 P.2d 870] ; *Reynolds* v. *Willson*, 51 Cal.2d 94, 99-100 [331 P.2d 48].) That section of the Restatement reads:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

It is not disputed that conditions (a) and (b) of this section are satisfied by the evidence. There is evidence that over a long period of time to the knowledge of employees and officers of appellant children were seen playing in and around its reservoir and even on occasions swimming therein. There is also testimony from some of these agents of appellant that they realized that the place was a very dangerous one to children who might trespass thereon. Appellant had constructed a fence about the entire area for the purpose of keeping out trespassing children and no claim is made that the cost of the construction and maintenance of this fence was not "slight as compared to the risk to young children involved therein." The evidence is therefore sufficient to satisfy condition (d). It was the plaintiffs' theory that the appellant had negligently permitted this fence to fall into disrepair so that children could enter through or over it and the evidence is sufficient to support a finding against appellant on this issue.

The crux of the case depends upon the question whether there was sufficient evidence to satisfy condition (c) of the Restatement. It must be conceded that an open body of water in and of itself is not sufficient to bring a case within the attractive nuisance doctrine. (*Reynolds* v. *Willson, supra,* 51 Cal.2d at p. 100.) In Reynolds the court said after stating this rule: "The manner of its maintenance and use may, however, be such as to impose the duty of ordinary care on the possessor toward children of tender years notwithstanding they may technically occupy the position of trespassers at the time."

In Reynolds condition (c) of section 339, Restatement of Torts was found to be satisfied by the fact that the bottom of the pool in which the child was injured had become slippery by an accumulation of algae, dead leaves and other decomposed material. (51 Cal.2d at pp. 97, 99-100.) The bank from which the child fell was an "artificial" and not a "natural" one. It had been created by the quarrying operations of the previous owner. The evidence is that this bank was composed of shale or crumbly rock. One of the divers who was endeavoring to recover the drowned boy's body testified: "The cliff face itself was made up of what we referred to at

the time as rock and shale. It would not be shale in the normal sense but rock that was very crumbly. We weighed nothing in the water, yet we were unable to exert the slightest pressure upon it, it would fall away and ultimately, because of the raining rocks, we were forced to suspend our operations because the rocks were raining down upon us in the water."

The dead boy's companion testified as to his fall from the bank into the water: "Well, then he tried to go down and stand on the shale. Then it gave away. . . . He fell in."

Appellant argues that the danger in standing on a bank of shale or crumbly rock should be apparent to any child of decedent's age. We are satisfied that this presented a question of fact and not of law. In *Courtell* v. *McEachen, supra,* the court said at page 458 of 51 Cal.2d quoting from Restatement of Torts, section 339, comment (b):

"The duty of the possessor of land under section 339 extends to dangerous conditions 'which, though observable by adults, are likely not to be observed by children or which contain risks the full extent of which an adult would realize but which are beyond the imperfect realization of children.'" Whether the danger from a cliff composed of crumbly rock would be realized by a boy of 8 presents a question of fact properly to be resolved by the jury.

We can find no logical distinction between the artificial pool which had become slippery by an accumulation of algae, leaves and other decomposed material involved in the Reynolds case and an artificial bank above a pool which was likely to give way, because it was composed of crumbly rock, and precipitate a child into the pool below. We think there is a clear difference between an artificial sandpile such as discussed in *Knight* v. *Kaiser Co.,* 48 Cal.2d 778 [312 P.2d 1089], and an artificial bank composed of rock which is subject, because of its friable nature, to crumble and break away when subject to the weight of a child's body. The rock bank may readily present an appearance of firmness and solidity to a child which he must know that a pile of sand by its very nature does not possess. The fact that the bank was artificially created satisfies the definition of section 339, Restatement of Torts: "other artificial condition which he maintains upon the land."

Many cases are cited in the briefs but each case depends upon its own facts and a discussion of the host of California

cases in which the doctrine of attractive nuisance has been considered seems pointless in view of the substantial factual differences between those cases and the one here presented.

Judgment reversed for the error first herein discussed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied April 3, 1959, and the following opinion was then rendered:

THE COURT. — On petition for rehearing respondent argues that since we held the evidence sufficient to support a plaintiffs' judgment on the ground of attractive nuisance we should have affirmed following the rule stated in *Brandes* v. *Rucker-Fuller Desk Co.*, 102 Cal.App. 221, 228 [282 P. 1009] : ". . . even though the evidence may not be sufficient to sustain a cause of action . . . to which an instruction applies, a reversal may not be had upon that ground if the evidence as to other causes of action . . . is sufficient to sustain the verdict."

This rule has frequently been announced in opinions in the District Courts of Appeal of which respondent cites 15. As so broadly stated it has not been applied in any recent opinion of the Supreme Court. In *Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 500 [225 P.2d 497], the question was presented to the Supreme Court and the counterargument was made that "there is no way of determining whether responsibility was laid upon each of them [defendants] because of general negligence, or violation of the statute." The court after finding that the erroneous instructions as to statutory duty only applied to one defendant was careful to point out that since the jury found against both defendants it was clear that the verdict could not have been based upon the erroneous instructions which only applied to one of the two held liable. (36 Cal.2d pp. 500-501; *cf.* dissenting opinion in the same case, 36 Cal.2d 502.)

It is the generally accepted rule that if the court cannot determine whether the jury based its verdict on the erroneous instructions or not the error must be deemed prejudicial. (*Edwards* v. *Freeman*, 34 Cal.2d 589, 594 [212 P.2d 883] ; *Huebotter* v. *Follett*, 27 Cal.2d 765, 770-771 [167 P.2d 193] ; *Oettinger* v. *Stewart*, 24 Cal.2d 133, 140 [148 P.2d 19, 156 A.L.R. 1221] ; *Davenport* v. *Stratton*, 24 Cal.2d 232, 254 [149 P.2d 4].)

■ Where the jury is erroneously instructed that the defendant was under a statutory duty the likelihood of the jury being prejudicially misled is increased by the fact that the statutory duty becomes the measure of care and if the jury finds a violation of the statute it need not concern itself with the further question of common-law negligence as measured by the conduct of that ideal concept the man of ordinary prudence.

■ So parallel with the cases relied on by respondent we find another group of cases holding that erroneous instructions applying incorrectly a statutory duty are prejudicial although the verdict would find support on the theory of common-law negligence. (*Westberg* v. *Willde*, 14 Cal.2d 360, 369-371 [94 P.2d 590]; *Markwalder* v. *Leonhard*, 152 Cal.App.2d 254, 256-259 [313 P.2d 200]; *Clark* v. *Pamplin*, 147 Cal.App.2d 676, 679-680 [305 P.2d 950]; *Anderson* v. *Mothershead*, 19 Cal.App.2d 97, 99 [64 P.2d 995]; *Adrian* v. *Guyette*, 14 Cal. App.2d 493, 505-506 [58 P.2d 988]; *Elmore* v. *County of Lassen*, 10 Cal.App.2d 229, 233-234 [51 P.2d 481]; *Johnson* v. *Gokey*, 4 Cal.App.2d 497, 498-499 [41 P.2d 193]; *Pilcher* v. *Tanner Motor Livery*, 138 Cal.App. 558, 560-561 [33 P. 2d 58].)

Under the circumstances of this case we cannot say that the verdict was not based on the instructions erroneously applying the statutory duty.

Respondents' petition for a hearing by the Supreme Court was denied April 29, 1959.