[Civ. No. 23904. First Dist., Div. Three. May 29, 1968.]

DIANA CURRERI, a Minor, etc., et al., Plaintiffs and Appellants, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

604

Hoberg, Finger, Brown & Abramson, Michael J. Kennedy and James D. Mart for Plaintiffs and Appellants.

Thomas M. O'Connor, City Attorney, and George E. Baglin, Deputy City Attorney, for Defendant and Respondent.

BROWN (H. C.), J.—Plaintiffs appeal from a judgment of dismissal following the granting of a summary judgment in favor of the City and County of San Francisco (hereinafter referred to as City) in an action for personal injuries suffered by the plaintiff, Diana Curreri. This appeal does not apply to Dominico Basili, the other named defendant who was not a party to the motion for summary judgment and against whom an action is pending.

The parties are in essential agreement as to the facts elicited by discovery proceedings.

On Sunday, October 13, 1963, Dominico Basili, aged 78, parked his Ford sedan at a right angle to the north curb of Greenwich Street in front of the building (three flats) numbered 1022-24-26 Greenwich Street. It was the permissive custom to park automobiles at a right angle to the curb with both front wheels resting against the curb on the north side of the street and to park parallel to the curb on the south side of the street. When Basili returned to drive away there were other cars parked at right angle to the curb and very close to each side of his car.

The 1000 block of Greenwich Street is a two-way street running east and west and lies on a very steep hill sloping in an easterly direction. Because of the steepness of the hill and the close proximity of the other autos, it was difficult for Basili to see traffic coming down the hill. With a friend guiding him, Basili backed about half way from the curb but could not clear the other cars. He changed gears from reverse to drive, drove forward slowly to make another attempt to gain clearance until he was about one foot from the curb, and then moved his right foot from the accelerator toward the brake in order to stop the car. When he tried to stop, however, his foot shifted downhill from the brake to the accelerator. Basili's car jumped forward across the curb and over the sidewalk, struck Diana Curreri (plaintiff), a minor, who was sitting on the front steps of the flat at 1022-24-26 Greenwich, severely injuring her leg (necessitating amputation). Basili never felt his car cross the curb, and the curb gave no resistance to the forward motion of the car.

At the time of the accident the curb on Greenwich Street was two to three inches high. The Standard Specifications, Bureau of Engineering, Department of Public Works of the City and County of San Francisco required street construction contracts to provide for a "normal curb" of six inches. The last time the street was improved was in 1926. At that

time the City's Standard Specifications did not contain a provision requiring six-inch curbs.[1]

The complaint set forth the negligent driving of Basili and also alleged, *inter alia,* that the City negligently and carelessly maintained, inspected, operated and controlled the street and sidewalk; that the curb was low, approximately on the same level as the sidewalk, and did not provide a buffer for automobiles; that the City was careless in inspecting and regulating the parking of vehicles; that there existed a dangerous condition; and that the area was rendered unsafe for use by the public, all of which was well known to the governing agency of the City which failed and neglected to remedy the condition.

Appellant contends that it was error to grant a summary judgment as a triable issue of fact has been raised by the amended complaint and by the facts elicited in the depositions and other discovery proceedings.

The law to be applied in summary judgment is well settled. The court in *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785], said: ''The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits [or evidence obtained by discovery proceedings[2] in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining

---

[1]As to retrospective effect of the sections referred to see *DiGenova* v. *State Board of Education,* 57 Cal.2d 167, 173 [18 Cal.Rptr. 369, 367 P.2d 865]; *People* v. *Neff,* 117 Cal.App.2d 772, 779-780 [257 P.2d 47]; *Markwalder* v. *Leonhard,* 152 Cal.App.2d 254 [313 P.2d 200].

[2]Use of depositions is proper in motions for summary judgment. (*Saporta* v. *Barbagelata,* 220 Cal.App.2d 463, 469 [33 Cal.Rptr. 661].)

facts. . . ." (See also *Wilson* v. *Bittick*, 63 Cal.2d 30, 34-35 [45 Cal.Rptr. 31, 403 P.2d 159].)

The liability of the City of San Francisco is provided for and limited by the California Public Liability Act. (Gov. Code, §§ 830-840.)[3] Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Government Code section 830, subdivision (a), defines "dangerous condition" to mean: "[A] condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

The dangerous condition which appellant alleges creates the triable issue is the parking situation at the site of the accident —not only the low curbs, but all the circumstances relative to parking. Appellants argue that right-angle parking on the north side of this very steep street (Greenwich) requires the car to face north with both front wheels against the curb so that the entire car leans easterly with the slope; that this type of parking, together with the parellel parking on the south side of the street, creates a visibility problem for a driver backing out of his parking place, as well as a problem of control in applying the brakes or accelerator; and that the grade was so steep that a driver would tend to slide to the right if he let go of the steering wheel and would have difficulty in bringing his right foot upward from the accelerator

---

[3]The California Public Liability Act (Gov. Code, §§ 830-840) was enacted in 1963 following the decision in *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457]. *Muskopf* discarded prior conceptions of governmental immunity from tort liability. The Public Liability Act now defines the type of property conditions for which a public entity may be held liable.

to brake. This dangerous condition, argue appellants, was aggravated by the low curb—two to three inches high—which not only did not prevent Basili's auto from going onto the sidewalk, but which also failed to warn Basili when he passed over the curb and drove onto the sidewalk. Indicative that the situation is dangerous, appellants point to evidence in the record of a recommendation by the City's inspector that diagonal parking should be substituted for right-angle parking on Greenwich Street.

Appellants argue that the safest and most functional street, sidewalk and curb for the safety of persons using the sidewalk has been determined by respondent City and is set forth in their Standard Specifications of the Bureau of Engineering, Department of Public Works; that these specifications provide for a curb six inches in height; and that respondent's failure to meet the standards of safety which have the force of law constitutes a violation of mandatory duties and that the breach proximately contributed to the happening of the accident and injuries to Diana Curreri.

Section 815.6 of the Government Code provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Enactment is defined by section 810.6 of the Government Code to be "a constitutional provision, statute, charter provision, ordinance or regulation." " 'Regulation' means a rule, regulation, order or standard, having the force of law, adopted by an employee or agency of the United States or of a public entity pursuant to authority vested by constitution, statute, charter or ordinance in such employee or agency to implement, interpret, or make specific the law enforced or administered by the employee or agency." (Gov. Code, § 811.6.)

Chapter 10, article 15, section 703 of the San Francisco Public Works Code states in part: "All sidewalks shall be placed in accordance with specifications and rules which the director of Public Works is hereby authorized to prepare in conformity herewith and *as required for public convenience and safety,* such specifications and rules to apply to the quality and proportions of the required materials, the method of construction, and the type of finish." (Italics added.) Section 202(c) of the Standard Specifications, Bureau of

Engineering, Department of Public Works, City and County of San Francisco, 1956 edition provides in part: "Except as otherwise shown on the plans, or required, the top of the curb shall be 6 inches above the adjacent gutter." Sections 203(a) and 205(c) of the Standard Specifications also repeat the six-inch height requirement for curbs.

We do not agree with appellants' contention that sections 202(c), 203(a) and 205(c) of the Standard Specifications should be read in conjunction with section 108 of the San Francisco Charter, which, in substance, requires the Department of Public Works to keep streets in repair and property owners to repair sidewalks and the City to repair when the property owners fail to make such repair. It seems clear that sections 202(c), 203(a) and 205(c) of the Standard Specifications are not related to either section 108 of the San Francisco City Charter or sections 703 to 706.8 of the Public Works Code so as to create a retroactive mandatory duty to have curbs throughout the City six inches in height. Rather, the sections are intended to provide specifications for future construction contracts. Van Alstyne under the caption "Force of Law," states: "Only those regulations are covered to have 'the force of law' and that are promulgated pursuant to an authorization to 'implement, interpret, or make specific' a law being enforced or administered by the promulgator. This excludes informal 'guides,' 'policy manuals,' and 'recommended procedures' helpful in establishing the standards of statutes, but lacking the force of law. This distinction may be especially significant for provisions of Div. 3.6 requiring compliance with applicable regulations in order to avoid tort liability. See, e.g., GovtC §§ 815.6, 855; Note, § 810.6." (Van Alstyne, California Government Tort Liability, p. 492.) The evidence disclosed that the City's Department of Public Works does the repair work on streets and curbs. New street construction is performed by independent contractors. As the particular specifications relied upon by appellants are not a part of all curb construction done by the City, the specifications would appear to be only "guides" or "recommended procedures" rather than regulations having the force of law.

While the failure by the City to provide curbs on Greenwich Street six inches in height cannot be interpreted as negligence as a matter of law, the Standard Specifications do voice the City's interpretation as to the height a curb should be for safety purposes. In determining whether a

triable issue exists we must be guided by whether reasonable men might differ as to what constitutes a dangerous condition under all existing conditions. Here, a standard height is fixed by the City engineers (reasonable men) who intended the section to be a safety requirement for the protection of persons lawfully using the adjoining sidewalk or property. (See San Francisco Public Works Code, § 704.) Their determination is one factor to be considered.

 It is recognized, as contended by respondents, that the City of San Francisco has no duty to provide curbs or other protective features throughout the City which would in all cases prevent negligent motorists from driving from the street onto the sidewalk and damaging property or injuring persons. (See *Shipley* v. *City of Arroyo Grande,* 92 Cal.App.2d 748 [208 P.2d 51]; *Campbell* v. *City of Santa Monica,* 51 Cal. App.2d 626 [125 P.2d 561]; *Rodkey* v. *City of Escondido,* 8 Cal.2d 685 [67 P.2d 1053].)

Appellants, however, complain not only of the low curb as in *Shipley, supra,* or a minor street defect as in *Rodkey, supra,* or a city permitting automobiles on a promenade used by pedestrians as in *Campbell, supra,* but also of the steep street and the entire method of automobile parking. These cases, cited by the respondent, differ factually and are not controlling with respect to the condition of which appellants complain. (See *Pfeifer* v. *County of San Joaquin,* 67 Cal.2d 177, 184 [60 Cal.Rptr. 493, 430 P.2d 51].)

It is not contended by respondent that the facts disclose an adopted plan or design to control vehicle parking on this hill by the public authorities which, when once adopted, unless entirely arbitrary, would not be normally subject to a court's view in retrospect. (See *Cabell* v. *State of California,* 67 Cal.2d 150 [60 Cal.Rptr. 476, 430 P.2d 34]; *Becker* v. *Johnston,* 67 Cal.2d 163, 172 [60 Cal.Rptr. 485, 430 P.2d 43].) In *Pfeifer* v. *City of San Joaquin, supra,* the defense of plan and design was also interposed. The court concluded that the evidence viewed more favorably to plaintiff failed to establish the existence of the dangerous condition upon which the claim against the county rested. The *Pfeifer* case differs factually from the case before us. There the injured person was clearly negligent and no dangerous condition was established.

Although *Branzel* v. *City of Concord,* 247 Cal.App.2d 68 [55 Cal.Rptr. 167], related to a cause of action arising in 1961 and prior to the enactment of the California Public Liability Act, the circumstances of an inadvertent act coinciding with

the negligent act of the City of Concord is also present. The language of the court at pages 71-73 is adaptable to the case before us and states as follows: "Public property is in a dangerous or defective condition within the meaning of former section 53051 when it involves an unreasonable risk of injury to the public [Citations.] *To put it another way, the condition of the property is dangerous or defective 'if the hazard is one from which injury may reasonably be anticipated to those properly using the area for the purpose intended.'* . . .

"Whether a given set of facts or circumstances creates a dangerous or defective condition is as a general rule a question of fact for the determination of the trier of fact [citations] but the question may be determined as a matter of law 'if reasonable men following the law can draw but one conclusion from the evidence presented.' [Citations.]" (Italics added.)

 The trier of fact could be justified in concluding that the two to three-inch curb might be considered no protection to persons lawfully using the sidewalk and adjacent property. Parking on many of San Francisco streets is a hazardous procedure in itself. It is believed that reasonable persons may differ as to the type of protective measures, if any, that may be indicated on these streets. Whether a high curb, or angle parking, or a prohibition of parking, or elimination of right angle parking, or a barricade were precautions which should have been foreseen to have prevented the accident is, of course, unknown. However, under the circumstances, the trier of fact could reasonably conclude that the City by the omission of one or more of these or other precautionary measures maintained a dangerous condition as to the overall parking situation on Greenwich Street.

Basili, the driver of the vehicle which struck appellant, may have been negligent, but prior to his momentary lapse he apparently tried to exercise care. He had a friend stationed in a position to warn him of approaching vehicles and to assist in guiding him as he attempted to back out of the parking space. There is no evidence to indicate recklessness on Basili's part. His negligence consisted of stepping on the accelerator instead of the brake. Reasonable persons might believe, therefore, that a higher curb would have presented a sufficient obstacle to prevent Basili's going onto the sidewalk or would have given Basili a jolt such that he might have changed the course of his auto.

The language of the court in *Branzel, supra,* appears applicable where it states: "It is not unreasonable to anticipate that a momentary miscalculation or lapse on the part of the human agent, some quirk in his instinctive reaction . . ." (p. 74) to the hazards of manipulating an automobile on a steep hill under close parking conditions or, as the evidence shows here, some sudden and unforeseen movement of the maneuvering automobile, might result in an auto crossing the curb and causing damage.

Basili's negligence does not preclude the possibility of a finding that a dangerous condition was permitted to exist by the City and that such condition was a concurring proximate cause of the injury. (See *Gardner* v. *City of San Jose,* 248 Cal.App.2d 798, 805 [57 Cal.Rptr. 176].) In *Callahan* v. *City & County of San Francisco,* 249 Cal.App.2d 696 [57 Cal.Rptr. 639] (hearing by Supreme Court denied May 27, 1967), the plaintiff was a passenger in an automobile driven on a street in San Francisco known as Brotherhood Way, which street was frequently covered with fog and was shrouded in fog on the day plaintiff was injured. It was alleged in the complaint that the street was so constructed as to give the indication that it was a freeway, but the street at the end of Brotherhood Way came to a sharp right-angle turn. The driver of plaintiff's vehicle, who was racing another automobile, continued straight, missed the right-angle turn in the fog, and caused the accident and ensuing injuries to the plaintiff. The court said: "The question, therefore, is, assuming that Day was negligent because of his actions as charged by plaintiff in her original complaint, and assuming, as we must, that the allegations against the city are true: Does this exonerate the city as a matter of law from liability? Of course, the negligence of the third party may become a superseding cause, thereby striking out as a causative factor the public entity's negligence. But it is established that although a third person may have been concurrently negligent with a public entity, the latter is not necessarily relieved from liability. [Citations.] Foreseeability is the primary element. [Citations.] The question of proximate cause essentially is one of fact. [Citations.]" (P. 701.) (See *Gardner* v. *City of San Jose, supra,* 248 Cal.App.2d 798; *Branzel* v. *City of Concord, supra,* 247 Cal.App.2d 68; *Irvin* v. *Padelford,* 127 Cal.App.2d 135, 141 [273 P.2d 539]; *Chavez* v. *County of Merced,* 229 Cal.App.2d 387, 395 [40 Cal.Rptr. 334]; *Bauman* v. *City & County of San Francisco,* 42 Cal.App.2d 144, 154 [108 P.2d 989].)

The court in *Callahan, supra,* 249 Cal.App.2d 696, 703-704, explained the reasons for concurrent public liability as follows: ''(1) If in cases involving streets and highways the liability of the city were confined to cases wherein a particular driver was using due care, the public entity would gain, in practical effect, an imputation of negligence to the occupants of any vehicle, the driver of which was not at the time exercising due care. Although the conditions were dangerous to the public in general, the city would be exonerated from liability to innocent parties by reason of the negligence of another, even if the other's negligence did not break the chain of causation. Such a holding would bar liability of the governmental unit in many cases affecting wholly blameless parties; for example, all of the passengers of a bus would be denied relief if their driver's negligence concurred with negligence of a governmental unit in maintaining a *generally* dangerous condition. (2) It is not to be thought that the Legislature intended to diminish the responsibility of governmental units to this extent when the Legislature did not say so clearly. (3) The words of section 830, subdivision (a) are principally descriptive of the condition of the property rather than of the person using it. Unless they mean that the responsibility of the governmental unit is to the public at large, as distinguished from a particular person, there would exist this incongruous situation: the property would at the same time be in a dangerous condition as to the persons generally, but not in a dangerous condition as to the particular user and to those persons subject to, but not responsible for, his conduct.''

In considering the evidence produced by the discovery proceedings relative to parking on the Greenwich Street hill with a view most favorable to the appellant, together with the evidence of the recommendation of the city inspector to substitute diagonal for right angle parking; the City's standard for six-inch curbs, as set forth in the Standard Specifications and section 58 of the City Traffic Code which requires motorists to curb their vehicles when parking on hills, it would not be unreasonable for the trier of fact to believe that the City has permitted motorists to park against a curb so low under the circumstances as to endanger persons on the sidewalk or adjoining property.

Reasonable persons could find (under Gov. Code, § 835) (1) that the City permitted a dangerous condition to exist; (2) that the dangerous condition proximately contributed to

plaintiff's injuries; (3) that the risk to those lawfully using the sidewalk and adjoining property were foreseeable, and (4) that the City (Gov. Code, § 835.2) had notice for a sufficient time to have adopted protective measures.

In reaching this conclusion relative to respondent's motion for summary judgment, we do not try to decide the issue but merely have determined that an issue exists.

The judgment is reversed.

Draper, P. J., and Salsman, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 24, 1968. McComb, J., and Burke, J., were of the opinion that the petition should be granted.