[Civ. No. 9608. Fourth Dist., Div. Two. Oct. 16, 1970.]

ROBERT J. BAKITY, a Minor, etc., Plaintiff and Respondent, v. COUNTY OF RIVERSIDE, Defendant and Appellant.

COUNSEL

Thompson & Colegate and Thomas H. Fitzpatrick for Defendant and Appellant.

Carroll & Anderson and Allen J. Kent for Plaintiff and Respondent.

OPINION

TAMURA, Acting P. J.—Plaintiff was injured in a two-car intersection collision. He brought the present action against the County of Riverside on the theory that the accident was caused by a dangerous condition of public property. Following a jury verdict and judgment for plaintiff, defendant unsuccessfully moved for a judgment notwithstanding the verdict and for a new trial. Defendant appeals from the orders denying the two motions and from the judgment.[1]

Although defendant seeks reversal on several grounds, the thrust of its appeal is that there was no substantial evidence of its liability.

 It is axiomatic that a reviewing court must view the evidence in the light most favorable to the party prevailing below. (*Waller* v. *Southern Pacific Co.*, 66 Cal.2d 201, 204 [57 Cal.Rptr. 353, 424 P.2d 937]; *Estate of Teel*, 25 Cal.2d 520, 527 [154 P.2d 384]; *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) As so viewed, the evidence may be summarized as follows:

The accident occurred at about 7 p.m. on April 2, 1965, at the intersection of two county highways, Avenue 51, an east-west street, and Calhoun Street, a north-south street. Avenue 51 was controlled by stop signs. Plaintiff was a passenger in a vehicle northbound on Calhoun which was struck by a vehicle westbound on Avenue 51 driven by Ernest Moreno. The collision occurred when the Moreno vehicle failed to stop at the intersection.

The stop sign controlling westbound traffic on Avenue 51 was located 36 feet east of the east line of Calhoun Street and near a eucalyptus tree growing on county right of way. There were no "Stop Ahead" warning signs either posted or on the pavement for westbound traffic on Avenue 51. There were several tangerine trees near the southeast corner of the intersection

---

[1]The order denying the motion for new trial is not appealable and must be dismissed. (*Rodriguez* v. *Barnett*, 52 Cal.2d 154, 156 [338 P.2d 907].)

which obstructed the vision of each driver of the approach of the other vehicle for a distance of about 100 feet from the intersection.

The speed limit on Avenue 51 was 65 miles per hour. At the time of the accident it was overcast and dark and the pavement was wet from a recent rain. The intersection was unlighted.

Mr. Moreno did not recall the collision or the events immediately preceding it. He testified that he had travelled on Avenue 51 a few times during the day in the year prior to the accident, but had never travelled it at night. Mrs. Moreno, who was with her husband, did not see the stop sign until the vehicle was "right on top of it." She testified it was at this point Mr. Moreno applied his brakes. A California Highway Patrol officer who investigated the accident estimated the speed of the Moreno vehicle at the point of impact to be 30-40 miles per hour. Blood tests taken of Mr. Moreno shortly after the accident revealed a blood alcohol count of 0.10.

A witness who resided at one corner of the intersection for about four or five years testified that during the day the shade from the trees on Avenue 51 made the stop sign difficult to see and that he had observed cars failing to stop. Several defense witnesses testified that they had travelled Avenue 51 and had no difficulty seeing the stop sign; those witnesses all had known of the existence of the stop sign.

An investigating highway patrol officer testified that on low beam the stop sign would be illuminated at a distance of approximately 350 feet. In his opinion if a vehicle were travelling 65 miles per hour, it could not be stopped within a distance of 350 feet.

# I

Defendant urges that there was no substantial evidence to support a finding that a dangerous condition existed or that, if such condition did exist, it was the proximate cause of plaintiff's injuries.

In order to establish liability of a public entity for a dangerous condition under applicable provisions of the Tort Claims Act of 1963 (Gov. Code, §§ 830-840.6), plaintiff must establish by preponderance of the evidence the elements required by section 835 of the Government Code. That section provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the

public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

A dangerous condition is defined by statute as a "condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830.) ■ Whether a given set of facts and circumstances creates a dangerous condition is usually a question of fact and may only be resolved as a question of law if reasonable minds can come to but one conclusion. (Gov. Code, § 830.2; *Gray* v. *Brinkerhoff,* 41 Cal.2d 180, 183 [258 P.2d 834]; *Curreri* v. *City etc. of San Francisco,* 262 Cal.App.2d 603, 611 [69 Cal.Rptr. 20]; *Branzel* v. *City of Concord,* 247 Cal.App.2d 68, 73 [55 Cal.Rptr. 167]; *Holder* v. *City of Santa Ana,* 205 Cal.App.2d 194, 197-198 [22 Cal.Rptr. 707].)

■ In the present case the jury could reasonably have found the existence of a dangerous condition at the intersection. There were tangerine trees at the southeast corner of the intersection which obstructed the view of approaching vehicles within 100 feet of the intersection. While the record is unclear whether the trees were on or off the county right of way, assuming they were growing on adjacent property, the jury could nevertheless have reasonably inferred that by reason of their proximity to the intersection they exposed motorists using the highway to a substantial risk of injury. ■ Condition of public property may be dangerous where the condition of adjacent property exposes those using public property to a substantial risk of harm. (*Branzel* v. *City of Concord, supra,* 247 Cal. App.2d 68, 75.) "[A] municipality may be held liable for failure to guard against accidents due to a dangerous or defective condition even though that condition exists off the traveled portion of the highway so long as it is so connected with or in such proximity to the traveled portion of the highway as to render it unsafe to those traveling thereon." (*Gallipo* v. *City of Long Beach,* 146 Cal.App.2d 520, 528 [304 P.2d 106]; *Campbell* v. *City of Palm Springs,* 218 Cal.App.2d 12, 22 [32 Cal.Rptr. 164]; *Dudum* v. *City of San Mateo,* 167 Cal.App.2d 593, 597 [334 P.2d 968]; *Rose* v. *County of Orange,* 94 Cal.App.2d 688, 691 [211 P.2d 45].)

The principle announced in those cases is preserved under the Tort Claims Act. In its comment to section 830 the Law Revision Commission states in pertinent part: "Under the definition as it is used in subsequent sections, a public entity cannot be held liable for dangerous conditions of

'adjacent property.' A public entity may be liable only for dangerous conditions of its own property. But its own property may be considered dangerous if it creates a substantial risk of injury to adjacent property or to persons on adjacent property; and *its own property may be considered dangerous if a condition on the adjacent property exposes those using the public property to a substantial risk of injury.*" [Italics added.]

■ The fact that the stop sign was located 36 feet east of the easterly line of the intersection without any signs warning motorists of the impending stop, either posted or painted on the pavement, constituted a further circumstance supporting the finding of a dangerous condition. It is common knowledge that stop signs are normally placed at the point where vehicles are intended to be stopped. In the present case there was expert testimony by defendant's traffic engineer to that effect. ■ Placing a stop sign in an unanticipated position could constitute a trap for an unwary motorist. Although sections 830.4 and 830.8 of the Government Code, quoted below,[2] provide that a public entity may not be held liable for failure to install traffic signs or signals, when it does so in such a manner as to constitute a trap, liability may be imposed for the maintenance of a dangerous condition. (*Teall* v. *City of Cudahy,* 60 Cal.2d 431, 434 [34 Cal. Rptr. 869, 386 P.2d 493]; *Hilts* v. *County of Solano,* 265 Cal.App.2d 161, 174 [71 Cal.Rptr. 275].) ■ Section 830.8 of the Government Code does not exonerate a public entity for failure to post traffic signs where they are necessary to warn motorists of the existence of a dangerous condition. (*Hilts* v. *County of Solano, supra;* see *Pfeifer* v. *County of San Joaquin,* 67 Cal.2d 177, 184 [60 Cal.Rptr. 493, 430 P.2d 51].) ■ We conclude that there was substantial evidence to support the finding of the existence of a dangerous condition.

Defendant also urges that Mr. Moreno's failure to stop was, as a matter of law, the sole proximate cause of the accident. The contention is devoid of merit.

---

[2]Section 830.4 of the Government Code provides: "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code."

Section 830.8 of the Government Code provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic, and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

■ Under the Tort Liability Act it is not necessary for plaintiff to establish that the dangerous condition was the sole cause or exclusive cause of the accident. (California Government Tort Liability (Cont.Ed.Bar) p. 199.) ■ Negligence of a third person does not, as a matter of law, exonerate the public entity. (*Callahan* v. *City and County of San Francisco,* 249 Cal.App.2d 696, 701 [57 Cal.Rptr. 639].) The intervening or concurrent negligent act of a third person does not break the chain of causation provided the dangerous condition contributed in some way to the injury. (*Hilts* v. *County of Solano, supra,* 265 Cal.App.2d 161, 173; *Curreri* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d 603, 612; *Callahan* v. *City and County of San Francisco, supra; Gardner* v. *City of San Jose,* 248 Cal.App.2d 798, 805 [57 Cal.Rptr. 176]; *Chavez* v. *County of Merced,* 229 Cal.App.2d 387, 395-396 [40 Cal.Rptr. 334]; *Bady* v. *Detwiler,* 127 Cal.App.2d 321, 337 [273 P.2d 941]; California Government Tort Liability, *supra,* p. 199.) ■ In the instant case there was substantial evidence of the existence of a dangerous condition. Whether Mr. Moreno was negligent in failing to stop, and, if negligent, whether his conduct was a superseding cause were questions of fact for the jury. (*Callahan* v. *City and County of San Francisco, supra,* 249 Cal.App.2d 696; *Bauman* v. *San Francisco,* 42 Cal.App.2d 144, 154 [108 P.2d 989].) On the basis of the evidence heretofore summarized, the jury could have reasonably found that defendant's maintenance of a dangerous condition concurred in or contributed to the accident.

## II

■ Defendant complains that the court erroneously instructed the jury on the concept of common law negligence.

First it is urged that the court erroneously instructed the jury that plaintiff had the burden of proving defendant's negligence. While not articulated with precision, the argument seems to be that the instruction may have erroneously caused the jury to believe that the county's liability could be predicated upon common law negligence apart from its liability under the statute. Under the former Public Liability Act, it was held to be improper to instruct on negligence (e.g., *Owen* v. *City of Los Angeles,* 82 Cal.App.2d 933, 942 [187 P.2d 860]; *Pittam* v. *City of Riverside,* 128 Cal.App. 57, 67-68 [16 P.2d 768]) because it might mislead the jury into predicating liability on the negligent act of an employee or agent without regard to the statutory conditions which must be met to impose liability on a public entity. (*Hilts* v. *County of Solano, supra,* 265 Cal.App.2d 161, 170-171; *Behr* v. *County of Santa Cruz,* 172 Cal.App.2d 697, 712 [342 P.2d 987].) ■ However, where there is no evidence that an

agent or employee of the public entity was directly responsible for the accident, as distinguished from the creation of the dangerous condition, and the jury is fully instructed on the statutory basis of liability, the rendition of a general negligence instruction is nonprejudicial. (*Hilts* v. *County of Solano, supra,* 265 Cal.App.2d 161, 171.)

■ In the present case defendant complains of the reference to negligence in a general instruction that plaintiff had the burden of proving defendant's negligence, proximate cause and damages. In view of the specific instructions relating to the county's statutory liability, the jury could not have been misled by that reference to negligence. The court specifically instructed the jury that plaintiff's cause of action against defendant county "must meet the requirements of the law relating to the liability of a public entity for a dangerous condition . . ." and that "[b]efore the plaintiff may be entitled to your verdict" the jury must find that plaintiff proved by a preponderance of the evidence each of the elements specified in section 835 of the Government Code as listed in the instruction. Moreover, here, as in *Hilts, supra,* there was no evidence that an agent or employee of the county was directly responsible for the accident. In the foregoing circumstances the giving of the questioned instruction was nonprejudicial.[3]

■ Secondly, defendant complains of the rendition of instructions defining the concept of negligence.

The giving of such instructions was proper and necessary. The jury's understanding of the concepts of negligence, foreseeability and proximate cause was essential in order to enable it to determine whether the elements specified by section 835 of the Government Code had been established. Plaintiff was required to prove that the "dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred," and that it was either created by a "negligent or wrongful act or omission of an employee of the public entity" or that the "public entity had actual or constructive notice of the dangerous condition" in time to have taken measures to protect against it. (Gov. Code, § 835.) Moreover, whether Mr. Moreno was negligent, and, if so, whether his negligence was a superseding cause were vital issues in the case.

■ Finally, defendant urges that the court erred in giving the

---

[3]Defendant is hardly in a position to complain of the questioned instruction. The record discloses that at defendant's request the jury was instructed that the issues to be determined were defendant's negligence, proximate cause and damages. Moreover, the pretrial order framed the issues in those terms, and in their respective arguments to the jury both plaintiff and defendant, without objections, told the jury that those were the issues to be determined.

following instruction: "If the likelihood that a third person may act in a particular manner is the hazard, or one of the hazards, which makes the defendant County of Riverside negligent, such conduct by a third person, whether negligent, intentionally tortious, or criminal, does not prevent the defendant, County of Riverside, from being liable for harm caused thereby.

"An act or an omission may be negligent if the defendant realizes, or should realize that it involved an unreasonable risk of harm to another through the negligent or reckless conduct of the other, or a third person."

It is urged that the first paragraph could have led the jury to believe that if they found that there was a likelihood that a person would fail, for whatever reason, to stop at the stop sign, that fact alone would always render the public entity liable.

It would be unreasonable to assume that the jury would have given such a strained construction to the instruction. ▆ A single instruction or a clause or phrase in an instruction is not to be read in a vacuum but must be construed with all other instructions given. (*Woodcock* v. *Fontana Scaffolding & Equipment Co.,* 69 Cal.2d 452, 458 [72 Cal.Rptr. 217, 445 P.2d 881].) When the instructions, considered as a whole, state the law fairly and clearly, they are unobjectionable even though, by selecting isolated passages from single instructions, they may in some respects be subject to criticism. (*Waller* v. *Southern Pacific Co., supra,* 66 Cal.2d 201, 213.) ▆ In determining whether the rendition of apparently conflicting instructions requires reversal, the question is whether the instructions when read as a whole and in the light of the circumstances of the case in which they are given, would have misled or confused a person of ordinary intelligence. (*Sebrell* v. *Los Angeles Ry. Corp.,* 31 Cal.2d 813, 817 [192 P.2d 898]; *Arno* v. *Stewart,* 245 Cal.App.2d 955, 970-971 [54 Cal.Rptr. 392].)

▆ As we have heretofore noted, it was necessary that the jury understand the concept of foreseeability. One of the statutory elements plaintiff was required to prove was that "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred. . . ." (Gov. Code, § 835.) The instruction in question was apparently based upon principles of foreseeability enunciated in cases involving liability for common law negligence without adapting them to the instant case. Consequently, it is subject to the criticism that it is premised on liability for negligence. However, when read with all of the other instructions, particularly the specific instruction on the statutory elements plaintiff was required to establish and the instruction on the definition of a dangerous

condition,[4] a jury of ordinary intelligence could not have reasonably construed the instruction to mean that if there was a likelihood of a person failing to stop at the stop sign, for whatever reason, the county would "always be liable."

## III

 Finally, defendant contends that the court committed prejudicial error in permitting plaintiff to cross-examine defendant's traffic engineer, Mr. Dobbins, concerning two state Department of Public Works' publications—one a manual relating to highway planning and the other relating to highway maintenance.

The record discloses that plaintiff propounded the following pretrial interrogatory to defendant: "Kindly set forth name, author, if any, and publisher if any, any and all manuals and/or books which you used at or about the time of the instant automobile collision as a guide or standard to erect stop signs, or any other directional or warning signs alongside a county road?" Mr. Dobbins responded: "State of California Department of Public Works, Division of Highways, Planning manual. State of California, Department of Public Works, Division of Highways, Maintenance Manual."

At the trial plaintiff called Mr. Dobbins under section 776 of the Evidence Code. Mr. Dobbins testified he used the manuals as guides in recommending traffic signs and warning devices on county highways. He was then questioned with respect to portions of the manuals relating to principles to be observed in the installation of stop signs and warning signs.

Defendant urges that books may be used in the cross-examination of an expert only where the witness has based his opinion on such books.

The instant case does not involve the question when books may be used to cross-examine an expert with respect to his opinion. As traffic engineer for defendant county, Mr. Dobbins made recommendations for

---

[4]The jury was instructed: "A dangerous condition, as that term is used in these instructions, means a condition of property that creates a substantial risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.

"A condition is not a dangerous condition if the risk created by the condition was of such a minor, trivial, or insignificant nature in view of the surrounding circumstances that it did not create a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that such property would be used.

"A public entity is not an insurer of the safety of persons using its property. It is not required to maintain its property free from every defect that might possibly lead to injury."

the placement of traffic signs on county highways, including the roads in question. While he was obviously an expert, qualified as such, and in the course of his testimony gave opinions, the state manuals were used to cross-examine him with reference to the performance of his duties as county traffic engineer and not with reference to any expert opinion rendered by him. Because of their potential relevance to the question whether the stop sign was properly located and whether warning signs should have been posted, cross-examination of Mr. Dobbins with respect to his familiarity with and applicability of the standards discussed in the state manuals which he admittedly used as guides in posting traffic signs on county highways was proper. Indeed, refusal to permit such cross-examination might have been error. (Cf. *Dillenbeck* v. *City of Los Angeles,* 69 Cal.2d 472, 482 [72 Cal.Rptr. 321, 446 P.2d 129].) Moreover, other than its bare assertion, defendant has not shown how it was prejudiced by the court's ruling.

The judgment and order denying a motion for judgment notwithstanding the verdict are affirmed. The appeal from the order denying a motion for a new trial is dismissed.

Kerrigan, J., concurred.